Argued and submitted June 26, affirmed December 7, 1981

In the Matter of the Compensation
of Edward R. Current, Claimant.

CURRENT,
*Petitioner,*

*v.*

STATE ACCIDENT INSURANCE FUND
CORPORATION,
*Respondent.*

(WCB No. 80-3905, CA A20144)

637 P2d 215

J. Michael Alexander, Salem, argued the cause for petitioner. With him on the brief was Brown, Burt, Swanson & Lathen, Salem.

Darrell Bewley, Appellate Counsel, State Accident Insurance Fund Corporation, Salem, argued the cause for respondent. With him on the brief were K.R. Maloney, General Counsel, and James A. Blevins, Chief Trial Counsel, State Accident Insurance Fund Corporation, Salem.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

VAN HOOMISSEN, J.

THORNTON, J., dissenting opinion.

## VAN HOOMISSEN, J.

Claimant appeals from an order of the Workers' Compensation Board reversing the opinion and order of the referee allowing the claim. We affirm.

Claimant was employed as a warehouseman. In July, 1978, he was standing on a tractor when he slipped and fell to the ground, causing impact on his legs and hips. He immediately felt pain in his right hip. His physician referred him to Dr. Struckman, an orthopedist, who became his primary treating physician and surgeon.

Claimant commenced receiving treatments, but his problems continued. An x-ray revealed a fracture of the right femoral head, with the possibility of aseptic necrosis. Bone scans confirmed a degenerative problem. Dr. Struckman reported that the condition was probably the result of the fall, but could not rule out an underlying disease process.

Claimant, although still complaining about his right hip, attempted to return to work in December, 1978. By March, 1979, he had also developed pain in the left hip, causing him to discontinue work. When he was examined for the new complaint, a tomogram revealed a possible old subcapital fracture of the left femoral neck. Subsequent diagnostic tests revealed aseptic necrosis in the left, as well as the right, hip.

SAIF then requested a medical opinion from Dr. Much, who concluded that the aseptic necrosis of both hips probably would have developed independently of a "knee strain" in 1978. SAIF next referred claimant to Orthopedic Consultants, where he was examined by Drs. Holm, Jones and Dow in May, 1979. Their findings showed constant bilateral pain in the groin, knees and hips, with significant restriction of hip movement. Their diagnosis revealed that the right hip disorder was directly related to the industrial injury, but the source of the left hip problem was "undetermined." Claimant was not considered medically stationary, and surgical intervention was recommended to correct the continuing difficulties on the right side.

Dr. Struckman did not agree with Orthopedic Consultants. He felt that aseptic necrosis was present bilaterally, that the condition on both sides should be accepted as job

related because the etiology was so similar and that surgery on the right hip was not warranted, although bone grafting on the left side would be advisable. That operation was performed on the left hip in June, 1979. After the surgery, Dr. Struckman felt claimant's right hip would be the major source of future problems and would restrict him from doing physical work.

Claimant continued through a post-surgical convalescent stage for his left hip into the fall of 1979. By November, his most persistent complaints involved his right side. He was evaluated by Dr. Zimmerman, an orthopedist, who diagnosed bilateral avascular necrosis of the right femoral head, but was unable to determine the source of the problem. He recommended right hip surgery, with a possible left side followup. Again, Dr. Struckman disagreed, feeling that the proposed surgery was not warranted.

Claimant's difficulties persisted. In February, 1980, Dr. Struckman attempted to reevaluate the condition in both hips. He indicated that he found no underlying disease process and felt the aseptic necrosis in both hips was related to the industrial injury. He acknowledged that the causative link between the original injury and the left hip necrosis would be unusual, but he suggested that, if SAIF had accepted responsibility for claimant's right hip condition, then the same industrial injury should be considered as the cause of the left hip problem. SAIF accepted responsibility for treatment of the right hip as a result of the fracture of the femoral head, however SAIF denied liability for the underlying bilateral necrosis. At SAIF's request, Dr. Anderson examined claimant in April, 1980, and found the right femoral fracture, pre-existing aseptic necrosis in both femoral heads and evidence of the bone graft which Dr. Struckman had performed on the left side. He felt that the fracture was a result of the effects of the industrial injury superimposed on a pre-existing aseptic necrotic change in the femur head. His prognosis for the right side was very guarded, with the prospect of continued care over a number of years and the eventual necessity for a hip replacement. He felt that the left hip condition was not connected to the industrial accident because of a lack of evidence of trauma.

Only Dr. Struckman felt that claimant's left side condition was caused by the industrial injury and his opinion was guarded because, as is obvious, he did not believe that it was medically probable that the injury caused claimant's right hip aseptic necrosis. Furthermore, Dr. Struckman's opinion was based upon a faulty premise, *i.e.:* that SAIF had accepted the right hip necrosis. In fact, SAIF only accepted responsibility for the right hip *fracture,* not the necrotic condition. Dr. Struckman's opinion is therefore *not* persuasive.

In contrast, Drs. Much and Anderson were emphatic in their opinions that the necrosis in both hips pre-existed the trauma. We find most persuasive this statement from Dr. Anderson's second report:

> "It is to be noted that the fracture in the right hip occurred in the femoral head in the articulating surface. This is to be distinguished from the usual fracture, which occurs either below the head of the femur or in the trochanteric region.
>
> "This fracture occurred probably due to the injuries superimposed upon a pre-existing aseptic necrotic change in the head of the femur. * * *"

That is, Dr. Anderson found that the nature of the injury itself suggested a pre-existing disease process was present.

Because we conclude claimant's evidence is conjectural only and not based on medical probabilities, we find claimant has failed to sustain his burden of showing that the greater medical probability is that the aseptic necrosis of the left femur did not pre-exist his injury.

We therefore affirm the order of the Board.

Affirmed.

**THORNTON, J.,** dissenting.

After reviewing this record I agree with the referee that the injuries to both hips were compensable. Simply stated, on the basis of the evidence I am unable to separate the injury to the right hip, which was accepted as compensable, from the injury to the left hip, which was not.

The majority concedes that when claimant fell he landed on both feet and both legs. The fact that claimant

started having trouble with his right hip some time before his left hip started hurting should not afford a basis for denying coverage for his left hip condition.

Dr. Anderson, as did Dr. Struckman, found a pre-existing aseptic necrosis in both femoral heads and expressed the opinion that the fracture to the right femoral head was a result of the effects of the industrial injury superimposed on the pre-existing aseptic necrotic change in the femur head. Yet, unlike Dr. Struckman, he concluded that the left hip condition was not connected to the industrial injury "because of lack of evidence of trauma." Obviously, Dr. Anderson was unaware of the true nature of claimant's fall. I concur with the referee in rejecting that portion of the opinion of Dr. Anderson stating that the aseptic necrosis in the left hip had no traumatic onset, because Dr. Anderson ignored (a) the fact that claimant landed on both feet and legs and (b) the surgery to the left hip, which was done to restore adequate circulation to that member.

SAIF accepted responsibility for the fracture of the right femoral head. At the hearing SAIF accepted all treatment and time loss for the conditions of the right hip, which included treatment and time loss as a result of the aseptic necrosis of the right hip.

SAIF also argues that the claimed injury to the left hip should be rejected because the original 801 report stated injury to the right leg; claimant told Orthopaedic Consultants that he landed on his right leg; and that claimant did not mention any left hip problems until March, 1979. An examination of the entire record shows that this claimed discrepancy is more apparent than real when one examines the chronology of claimant's symptoms. Immediately following his fall, claimant suffered pain mainly in the right leg. Several days thereafter the pain appeared to spread to the right hip. It was not until March, 1979, that claimant started to have pain in the left leg. The treatment of and eventual surgery to the left hip followed.

It is my conclusion that claimant has established that the fall from the tractor produced a pathological change in both femoral heads and that the bilateral aseptic necrosis was lighted up by the fall. I am not persuaded by SAIF"s

argument that the same trauma which produced the complications to the right hip did not and could not have any similar effect on the left hip.

I would reverse and reinstate the referee's decision.